## THE BALTIMORE AND OHIO RAILROAD COMPANY *v.* FREDERICK SCHUMACHER, Use of William H. Myers.

' *Decided June 19th, 1868.*

WAREHOUSEMEN ; LIABILITY OF.

H. delivered to the Central Ohio R. R. Company, at Newark, Ohio, two hundred and fifty barrels of coal oil to be transported to Bell Air in the same State, by the said company, thence via the B. and O. R. R. to Baltimore, thence by steamer to New York, to be delivered to S., or his assigns. The oil was delivered to the Baltimore and Ohio R. R. Company, at Bell Air, and reached Baltimore, where it was placed in an open lot near their warehouse on Locust Point, and thence forwarded to New York, where upon its arrival, it was ascertained there was a deficiency in quantity of sixty-seven barrels. *Held:*

That the responsibility of the proper custody and storage of the oil after it was unladen from the cars in Baltimore, attached to the Baltimore and Ohio R. R. Company, as warehousemen and forwarders, and they were bound to use ordinary care and diligence in its protection. (*a*)                                                              p. 176

A. S. was entitled to recover from the Baltimore and Ohio R. R. Company, for such loss of the oil by leakage, while in their custody after it was unladen from their cars, as was occasioned by their neglect or want of ordinary care as warehousemen and forwarders, as could be established to the satisfaction of the jury by competent and admissible evidence.                                                              p. 177

---

(*a*)  See *Merchants & Miners' Transportation Co. v. Wm. E. Story,* 50 Md. 4; see also *B. & O. R. R. Co. v. Keedy,* 75 Md. 320.  As to the lia-

\*Warehousemen and forwarders in regard to the commodity **169** intrusted to their charge are bound to use ordinary care and diligence, such as a prudent man would exercise over his own property of like nature; and such care should be proportioned to the injury or loss likely to be sustained by the absence of it.          pp. 174-175

• Appeal from the Superior Court of Baltimore City. .

In the month of May, 1862, K. Hager & Co., of Newark, Ohio, delivered 250 barrels of coal oil, to the Central Ohio Rail Road Company, to be by them transported to Bell Air, Ohio, thence by way of the Baltimore and Ohio Rail Road to Baltimore, and thence by steamer to New York, there to be delivered to the appellee or his assigns. The oil was delivered to the Central Ohio Rail Road Company in three lots, namely, 150 barrels on the 1st of May, 50 barrels on the 9th of May, and 50 barrels on the 15th of May, in the said year. On the receipt of each lot, a bill of lading was given by the company to the shipper. The oil was delivered to the appellants at Bell Air, and reached Baltimore in the same month. It was there unloaded from their cars, and placed in an open lot near their warehouse on Locust Point. On the 3rd of June, 1862, it was forwarded by the Steamboat Transportation Line, between Baltimore and New York, to the latter place, and there delivered to Wales, Wetmore & Co., the assignees of the appellee, where upon its arrival it was ascertained there was a deficiency in quantity of 67 barrels.

This action was brought by the appellee to recover from the appellants for this deficiency; the result of leakage as it was alleged, occasioned by the negligence and remissness of the appellants or their agents in leaving the oil exposed to the sun in the open lot, and by their failure to perform their undertaking as agreed upon in their bills of lading.

The plaintiff at the trial below presented eight prayers of which the court rejected the first, second, third, fourth, sixth and eighth, and granted the fifth, as follows:

5th. If the court shall be of opinion that the defendants had ceased to be liable as common carriers, on the deposit of

bility of a common carrier for torts or upon contracts, committed or to be executed beyond its own lines, see *McCann v. B. & O. R. R. Co.*, 20 Md. 202; *Hoffman v. Cumberland Valley R. R. Co.*, 85 Md. 391.

**170**  *the oil at Locust Point, and still retained possession thereof; then the defendants became liable as warehousemen and forwarders; and as such they were bound to use ordinary care and diligence, such as a prudent man would exercise in the care and control of his own property of like nature, and such care should be in proportion to the injury or loss likely to be sustained by any act on their part, at variance with such care; and if the jury shall believe, that as warehousemen and forwarders, the defendants did not protect the oil in question from the action of the sun, and use other means in the mode usually adopted by prudent business men in reference to that commodity, and shall further find that by reason of such neglect and want of care and diligence, the loss in question arose, then the plaintiff is entitled to recover to such an extent as the jury shall believe from the evidence he sustained loss.

The seventh prayer of the plaintiff was conceded.

The defendants excepted to the granting of the plaintiff's fifth prayer.

The defendants then offered seven prayers, of which the court granted the first, second and fifth, and rejected the third, fourth, sixth and seven.  To the refusal of the court to grant these prayers, the defendants excepted.

The rejected prayers were as follows :

3rd. If the jury shall find from the evidence, that coal oil, whether crude or refined, is of a character to prevent its being stored in the warehouse with other goods, by reason of the odor with which it infests the latter, and that in consequence it is customary to leave it exposed in the open air, and that the oil described in the bills of lading was exposed between the time of its arrival at Locust Point, and the time of its shipment, then there is evidence from which the jury may find, that there was no want of proper care of said oil by the defendants after it was unladen from the car, even should the jury believe, that it was customary to leave crude oil and not refined oil so exposed, and that the oil in question was in fact refined oil;

**171**  inasmuch as there was nothing in the bills of *lading to show whether the oil was crude or refined, and no testimony has been offered to prove, that the defendants were aware of its character while it was in their custody.

4th. That by the bills of lading which have been offered in

evidence, the defendants were bound as carriers only, while the oil in question was in transit over their road, and as warehousemen, after it was unladen from their cars, and they are not responsible for any leakage, either before said oil came into their possession or after it left their custody, nor in the absence of all proof of gross negligence, while the said oil was in transit in the cars, nor are the defendants responsible for any loss by leakage, while the said oil was in their custody, after it was unladen from the cars, if the jury shall believe that during that time, the defendants took ordinary care of it as crude oil, and that ordinary care is such care as it is customary to take of crude oil while in transit or waiting transportation.

6th. If the jury shall believe from the evidence, that the plaintiff knew of the presence of the oil in question at Locust Point, and saw it before it was shipped from thence to New York, and that it was in his power to have had the quantity of oil in the barrels gauged before shipment, so as by comparing it with the oil delivered to the defendants at Benwood, the loss of the oil while it was in their hands would be ascertained, it was his duty to have done so, and that failing in this, he cannot be permitted to guess at the damage chargeable to the defendants, and that should the jury find that, in other respects, he is entitled to recover, it must be for nominal damages only.

7th. If the jury believe from the evidence, that the damage complained of by the plaintiff in this suit, was caused by leakage, then the plaintiff is not entitled to recover in the absence of all proof of gross negligence, amounting to bad faith on the part of the defendants.

The verdict and judgment being against the defendants, they appealed.

*The cause was argued before Bartol, C. J., Stewart, **172** Brent, Miller and Robinson, JJ.

*Ferdinand C. Latrobe* and *Thomas Donaldson,* for the appellants:

The fifth prayer of the plaintiff, as granted by the court, is defective. It leaves to the jury to find the opinion of the court, without in fact indicating any means by which that opinion could be known to the jury. The court should have stated what

facts to be found by the jury, would show the liability of the defendants as common carriers, and what facts, as found by the jury, would terminate that liability, and what facts would show their liability as warehousemen. By this prayer, questions of law were submitted to the jury, and questions of fact were decided by the court.

This prayer is further defective in saying, that the ordinary care and diligence required of the defendants should be in proportion to the amount of loss likely to be sustained by any act at variance with such care. The amount of the injury or loss likely to be sustained, has nothing whatever to do with the question of the degree of care to be exercised; the degree of care to be exercised over 50 barrels of oil is the same as would have to be exercised over one thousand barrels of oil, though the loss in the latter case would be twenty times as great as in the former; the question of ordinary care is one proportioned to the quality of the subject in regard to which it is to be exercised, and not to its quantity or aggregate value. So that the expressions used in this prayer are not only vague and uncertain, and so calculated to mislead the jury, but according to the very meaning of the words themselves, state a false principle. Angell on Carriers, 45-47.

The prayer is still further defective because the court decides, that the action of the sun was injurious to the oil; this was a question of fact which was clearly one to be submitted to the jury. *Merchants Bank v. Bank of Commerce,* 24 Md. 53.

**173**    *Both in accordance with the law, and in accordance with the special contract made in the bills of lading executed by the Central Ohio Railroad Company, and received by the plaintiff, the liability of the defendants ceased on the unloading of the cars at Locust Point, the terminus of the Baltimore and Ohio Rail Road, and the facts shown by the evidence prove a delivery to the Steamboat Company. There was no obligation to give notice to the agent of the Steamboat Company or the consignee. *McCann v. B. & O. R. R. Co.,* 20 Md. 202; Story on Bailments, sec. 541; 2 Redfield on Railways, 101; *Elmore v. R. R. Co.* 23 Conn. 457; *Norway Plains Co. v. R. R. Co.* 1 Gray, 263.

*William Jessop Ward,* for the appellee:

It is enough, to entitle the owner in this action to recover

damages for negligence, to show that he delivered the oil in question to the Central Ohio Rail Road Company, in good order, and the burthen is cast upon the defendant, of proving that the goods were not injured while in his possession. *Smith v. R. R. Co.* 43 Barb. 225.

There exists no usage, in proper legal acceptation of that term, which, in the absence of notice to the next carrier, or of offer to deliver, justified the defendants in retaining the oil in question so long as was done in this case. 3 Am. Law Reg. 441. The carrier is bound to deliver at the end of his route to the next carrier, in a reasonable time, according to the usual course of his business, with all convenient dispatch. 2 Redfield on Railways, " Time of Delivery," 318. *Raphael v. Pickford,* 5 Manning & Granger, 551. Reasonable time is a question of fact depending on the circumstances of the case. *Nettles v. R. R. Co.* 7 Rich. 190; *Lipford v. R. R. Co.* 7 Rich. 409; Pierce on Railways, 434; 17 Wend. 311, 312.

If the defendants were not liable as carriers, after the arrival of the oil in Baltimore, and the lapse of a reasonably *limited time for delivery, then as *warehousemen* and **174** forwarders they were bound to use ordinary care and diligence. Story on Bailments, secs. 444, 448, 450, *a* 570, 571; 3 Am. Law Reg. 441; 5 Am. Law Reg. 25.

The principles applicable to warehousemen and forwarders did not justify the defendants' retention of the oil until a barge-load should have accumulated on their hands. Nor do they justify the exposure of the oil as was done in this case. *Barnes v. R. R. Co.* 4 B. & S. 66; 3 Am. Law Reg. 441.

The conditions as to leakage and delay contained in the bills of lading, cannot be construed to exonerate the defendants from liability for loss consequent on negligence, or the failure to use due care and diligence. Story on Bailments, sec. 571; *Schieffelin v. Harvey,* 6 John. 180; 4 Dutcher, 192. The rule of construction is that such exceptions are to be taken most strongly against the party for whose benefit they are made. *Atwood v. Reliance Trans. Co.* 9 Watts, 88; *York Company v. R. R. Co.* 3 Wallace, 107.

Stewart, J., delivered the opinion of the court.

The appellant, in the first exception, complains of the action

of the court below, in granting the appellee's fifth prayer, and in the second exception, in rejecting its third, fourth, sixth and seventh prayers.

The fifth prayer of the appellee, although somewhat peculiar in its structure, did not require the jury to find what was the opinion of the court, as was contended by the appellants' counsel, but upon the theory that the judgment of the court, as to the law, was as stated therein, upon the assumption that the appellant had ceased to be liable as a common carrier, and had become responsible for the proper custody of the oil as warehouseman and forwarder,—substantially asked the instruction to the jury, that the appellant, under such circumstances, in its character as warehouseman and forwarder, was bound **175** for *ordinary care and diligence over the oil in question, such·as a prudent man would exercise over his own property of like nature; and that such care should be in proportion to the loss likely to be sustained, by want of such care.

We see no objection to the standard of diligence prescribed therein.

Such care was incumbent on the appellant, as the character of the property entrusted to it required, and such as was properly adapted to its due protection and preservation.

" What constitutes ordinary diligence may also be materially affected by the nature, the bulk, and the value of the articles. A man would not be expected to take the same care of a bag of oats as of a bag of gold; of a bale of cotton, as of a box of diamonds. The value, especially, is an important ingredient to be taken into consideration upon every question of negligence. The degree of care which a man may reasonably be required to take of any thing, must essentially depend upon the quality and value of the thing. The bailee ought to proportion his care to the injury or loss which is likely to be sustained by any improvidence on his part." Story on Bailments, sec. 15; Redfield on Railways, 253, 282, 435, 436; Pierce on Railroads, 448.

Objection was also urged against that portion of the prayer, instructing the jury that if they believed from the evidence, " that the defendant did not protect the oil in question from the action of the sun, and use other means in the mode usually adopted," as an improper assumption on the part of the

court, as to a matter of fact exclusively within the province of the jury. If there were any force in this objection, special exception ought to have been taken thereto, under the Act of 1861-2, ch. 154, before we could overrule the action of the court below on that account—we discover, however, no validity in this objection. The court does not instruct the jury that the " action of the sun " would injure the oil, or that it required protection therefrom, but the purport of it was, that if the jury found the oil did require protection from the action of *the sun, and the appellant was guilty of neglect in tak-   **176** ing proper care of it in this particular, and use of other means for its preservation, such conduct made it liable for the consequential damage.

In the refusal of the appellant's third, fourth, sixth and seventh prayers, in the second exception, we see no error.

The court below properly refused the appellant's third prayer, amongst other reasons, because it erroneously assumed that there was evidence legally sufficient to go to the jury, to show that it was customary to leave oil, as an offensive article, to be stored with other goods exposed in the open air. Besides, the prayer was objectionable for the further assumption on the part of the appellant, that there was no evidence offered to prove that the appellant was aware of the character of the oil, when there was testimony on that subject to bring to the knowledge of the appellant that it was refined oil.

The responsibility of the proper custody and storage of the oil was on the appellant, and there was no specification in the contract to discharge it from the duty of ordinary care; if it were competent upon general principles, by any such special provision, to have relieved itself from such responsibility. 2 Redfield on Railways, 247, 251, 253; Pierce on R. R. 435, 448, 467; Story on Bailments, sec. 538; *Bank v. Champlain Transp. Co.* 23 Vt. 211; *Thomas v. R. R. Co.* 10 Met. 477; *Richards v. R. R. Co.* 20 Ill. 404.

" The general view of the American courts is, that in the absence of special contract, the rule laid down in the earlier English cases, that the carrier is only liable for the extent of his own route, and for the *safe storage and delivery* to the next carrier, is the more just and reasonable one." Redfield on Railways, 282.

The appellant's fourth prayer was properly rejected. It is substantially embraced in its second prayer which was granted, except that portion qualifying the duty of the appellant—to take care of the oil, simply as crude oil—whereas according to **177** *the evidence, the oil in question was not crude as the prayer assumed, but refined oil; and there was evidence from which notice of this character of the oil was brought to the attention of the appellant.

The sixth prayer, in effect, asked the court to instruct the jury that the plaintiff was merely entitled to nominal damages, no matter what was the extent of the proof in other respects, if they believed the appellee had the opportunity, whilst the oil was in the custody of the appellant at Baltimore, to have had the barrels of oil gauged before shipment, so as by comparing such ascertainment of the quantity of oil with the amount delivered to the appellants at Benwood, where the company had first received it, the loss whilst it remained in its custody at Baltimore, might be more definitely ascertained; and that the appellee failing to possess himself of such information could recover but nominal damages. We see no justice in such a requirement as that.

The appellee was obliged to furnish satisfactory proof of the loss in the oil, according to the instruction of the court previously given in granting the appellant's fifth prayer. According to that instruction the *onus* was on the appellee to establish the loss by competent and admissible evidence; but he was not required to prove it to a mathematical certainty, but simply to such degree as would be sufficient to satisfy the minds of the jury of the fact.

The seventh prayer of the appellant devolved a higher degree of proof upon the appellee, than could be legally required of him. Whether the negligence complained of was gross or slight, and without going into the inquiry, about which the authorities are conflicting and somewhat unsettled as to the different degrees of negligence, and metaphysical shades of distinction between very slight and fraudulently gross neglect, we think, if the appellee succeeded in showing to the jury that the loss of the oil was occasioned by the neglect or the want of ordinary care on the part of the appellant, as warehouseman

and forwarder, from all the evidence *in the case, to be **178** considered and determined by them, the appellant was answerable for any damage sustained by the appellee by reason thereof.

The effect of the instructions under all the prayers, reduced the responsibility of the appellant from that of a common carrier to one of an ordinary bailee—certainly a liberal relaxation of the common law rule of liability; and merely requiring of the appellant ordinary care as warehouseman and forwarder. We do not perceive that the appellant has any valid ground of complaint; and we sustain the rulings of the court below on the prayers brought up on the appeal for our revision.

*Judgment affirmed.*